UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN W. BLASSINGAME, JR., :
ADMINISTRATOR OF THE ESTATE :
OF JOHN W. BLASSINGAME, :
    Plaintiff, :
   :
    v. :
   : Civil Action No. 3:02CV2009 (CFD)
YALE UNIVERSITY, :
    Defendant. :

### RULING ON MOTION FOR PRELIMINARY INJUNCTION

By a complaint filed November 13, 2002, the plaintiff John W. Blassingame, Jr. ("plaintiff"), commenced this action as the Administrator of the estate of his father, John W. Blassingame ("Blassingame") against the defendant Yale University ("Yale").[1] Blassingame was a professor of history and African and African-American studies at Yale. He died in 2001. The dispute here arises out of Blassingame's work as editor of a series of books known as The Frederick Douglass Papers (the "Papers"). Blassingame had entered into contracts with Yale University Press ("Yale Press") regarding the publishing of the Papers. After the contracts were executed, Yale Press paid Blassingame's royalties from the Papers to the Association for the Study of Afro-American Life and History ("ASALH") and two Yale academic departments.

The complaint alleges that Blassingame secured a grant for the Papers project from the National Endowment for the Humanities in 1974, and that from 1976 to 1999 he was the "author and editor" of the Papers, and thus owned their copyright. It alleges that Blassingame worked as

---

[1]Jurisdiction is based on the Court's federal question jurisdiction, as the complaint raises issues of federal copyright law. See 28 U.S.C. § 1332.

-1-

an "independent contractor" on the Papers. Count one of the complaint asserts that Yale Press's use and sales of the Papers without paying royalties directly to Blassingame or his estate constitutes copyright infringement and breach of contract. Count two asserts a claim of unjust enrichment and asks the Court to declare the plaintiff the owner of the Papers.

Pending is the plaintiff's request for a preliminary injunction [Doc. # 27] to enjoin Yale from continuing to sell the Papers. For the reasons that follow, the application is DENIED.

## FINDINGS OF FACT

The Court finds that there were two enforceable contracts between Blassingame and Yale Press regarding the sale and marketing of the Papers. The first was executed by the parties in 1976 and the second, which superceded the first, was executed in 1979. Both contracts indicate that no royalty payments for the Papers were be made to Blassingame. Rather, the 1979 contract indicated that his royalties were to go to ASALH, and the prior contract from 1976 designated three entities–ASALH, the Yale History Department, and the Yale Afro-American Studies Department–to receive royalties from the project. There are no ambiguities in the royalty provisions of these contracts.

According to the testimony of Yale Press's Intellectual Property Manager Linda Boze Klein (which the Court credits), the publishing contracts were also similar to those typically used by Yale Press with other professors. Boze Klein also indicated that it is a common practice for professors under contract with Yale Press to designate charities or other entities to receive royalties rather than for the professors to receive royalty payments personally. Moreover, from the time he signed the initial contract in 1976 until his death in 2001, Blassingame never disputed the validity of either the 1976 or the 1979 contracts and never expressed an objection to Yale

Press that the royalty payments under the contract went to the entities designated in the contracts rather than to him or his family.

## CONCLUSIONS OF LAW

### I. Standard for Preliminary Injunctive Relief

The Second Circuit has cautioned that preliminary injunctive relief "is an extraordinary and drastic remedy which should not be routinely granted." Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir.1981) (internal quotation marks omitted). Entry of a preliminary injunction is appropriate where the party seeking the injunction establishes: (a) the injunction is necessary to prevent irreparable harm, and (b) either (i) likelihood of success on the merits, or (ii) sufficiently serious questions going to the merits of the claim as to make it fair ground for litigation, and a balance of the hardships tips decidedly in favor of the movant. See, e.g., Able v. United States, 44 F.3d 128, 130 (2d Cir.1995). Thus, the first part of the standard–irreparable harm–must always be met, but the party seeking an injunction may satisfy the second prong by establishing *either* a likelihood of success or sufficiently serious questions going to the merits and a balance of hardships in its favor. Thus, the Court must consider whether the plaintiff would suffer irreparable harm in the absence of a preliminary injunction. If so, the Court must then consider whether the plaintiff is likely to succeed on the merits *or* whether the plaintiff has raised sufficiently serious questions as to the merits, and the balance of hardships tips in his favor.

### II. Irreparable Harm

A. Presumption of Irreparable Harm in Copyright Infringement Cases

In its memorandum in opposition, Yale notes that a finding of a irreparable harm is

generally inappropriate where the injury can ultimately be addressed through the payment of damages. See JSG Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 79 (2d Cir. 1990) ("Irreparable injury is one that cannot be redressed through a monetary award. Where money damages are adequate compensation a preliminary injunction should not issue."). Yale claims the plaintiff has not offered any evidence to suggest that an award of damages would not be sufficient in this case. The Court agrees that the plaintiff has failed to indicate why damages would not make the estate whole if Yale is found to be liable on his claims. At the hearing on the motion for preliminary injunction, the plaintiff made references to damage to his father's reputation that might occur if Yale were to continue selling his father's work. However, he did not indicate the nature of such damage, or how the continued sale of the Papers might damage his father's reputation. If the estate is found to be the proper holder of the copyright and if Yale is found to be in breach of its contract, the only harm likely to come to the plaintiff if Yale continues to sell the Papers is that ASALH, rather than the Blassingame estate, would receive the royalty payments. This amount at issue would be readily calculable, and therefore damages would seem to be a sufficient remedy.

The plaintiff need not present evidence of irreparable harm to satisfy the first prong of the preliminary injunction standard if he can make a prima facie showing of copyright infringement; if such a showing is made, irreparable harm will ordinarily be presumed. See Merkos L'Inyonei Chinuch v. Otsar Sifrei Lubavitch, Inc., 312 F.3d 94, 96 (2d Cir. 2002) ("We have held that 'generally when a copyright plaintiff makes out a prima facie showing of infringement, irreparable harm may be presumed.'") (quoting ABKCO Music, Inc. v. Stellar Records, Inc., 96 F.3d 60, 64 (2d Cir. 1996)). It is questionable whether the rationale for the presumption is

-4-

applicable here.[2]  However, because the Court finds that the plaintiff has not demonstrated that he is likely to succeed on the merits or that there are serious questions going to the merits and that the balance of hardships tips in his favor, see discussion below, the Court need not decide whether or not the presumption should be applied.  For purposes of deciding this motion, the Court will assume that the plaintiff has met the irreparable harm test.

B.  Delay in Seeking Injunction

Yale has also argued that the Court should find that the irreparable harm standard has not been satisfied because the plaintiff waited over one year and four months after filing the complaint to file the injunction motion.[3]  The Second Circuit has indicated that in some circumstances a failure to request an injunction early in the litigation "undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."  Citibank, N.A. v. Citytrust, 756 F.2d 273, 277 (2d Cir. 1985).  The plaintiff has given no indication that the factual circumstances changed between the time he filed the lawsuit and when he filed the motion for injunctive relief, nor has he offered any other

---

[2]In the typical copyright infringement case, irreparable harm is presumed because the party infringing the copyright dilutes the value of the copyright to the valid holder by marketing a similar or identical product, and as such traditional post hoc damages calculations would be potentially complicated.  See Merkos, 312 F.3d at 96, 97 ("This case illustrates the rationale behind this presumption: Since [defendant] sells essentially the same product as [plaintiff] to the same market, it will obviously suffer considerable loss if [defendant] disseminates its [product] because each sale of [defendant's product] probably results in one less sale of the [plaintiff's product].").  Here, in contrast, the plaintiff and Yale are not marketing competing products, and it would be relatively easy to calculate damages if Yale was later held to have violated the plaintiff's copyright.

[3]Yale's memorandum in opposition erroneously indicates that the defendant "waited more than two years since filing his complaint to seek injunctive relief."  However, the plaintiff's complaint was filed on November 13, 2002 and the request for a preliminary injunction was filed on March 4, 2004.

explanation for the lengthy delay. While delay in seeking injunctive relief is a factor courts should usually consider in assessing whether the irreparable harm prong has been satisfied, it is not clear how that factor should be considered where the plaintiff has set forth a prima facie case of copyright infringement, thereby triggering the presumption of irreparable harm. However, because the Court has finds that the plaintiff has failed to satisfy the second prong of the preliminary injunction standard, <u>see</u> discussion below, it need not address this issue.

### III. Likelihood of Success on the Merits

The plaintiff is unlikely to prevail on the merits of his claims. Regarding his copyright infringement claim, while the plaintiff may be able to demonstrate that Blassingame owned the copyrights to the Papers, he is unlikely to be able to demonstrate that Yale or Yale Press infringed the copyrights; the evidence is likely to demonstrate that Yale Press was contractually permitted by Blassingame to publish the Papers and direct his royalties to the designated entities. Both the 1976 and the 1979 contracts between Blassingame and Yale Press explicitly indicate that "You [Blassingame] grant and assign to us the exclusive right to publish the work in all forms and in all languages during the full term of copyright and any renewal thereof throughout the world." Paragraph 23 of the 1976 contract indicates that "Royalty payments are to be divided equally among the following: The Department of History, Yale University[;] The Department of Afro-American Studies, Yale University[;] The Association for the Study of Afro-American Life and History, 1401 14th Street, N.W. Washington, D.C. 20005." The 1979 contract contains a similar provision in paragraphs 10 and 11, indicating that royalty payments under the contract–calculated as 3% of the list price of the clothbound edition and 1½% of the list price of the paperbound edition–were to be paid to ASALH. The plaintiff provided insufficient evidence

at the injunction hearing that Blassingame did not enter into these contracts knowingly, that the contracts lacked valid consideration to support them, or that they had any other deficiencies. Indeed, the 1979 contract was offered as a full exhibit by the plaintiff. The plaintiff did testify that he did not believe his father would have entered into such a contract–but that single piece of evidence is far from sufficient to demonstrate a likelihood of success on the merits.

As to the plaintiff's breach of contract claim, there is insufficient evidence from which the ultimate fact-finder could infer that Yale breached either the 1976 or the 1979 contract. The plaintiff is apparently claiming that by failing to pay royalties on the sales of the Papers to Blassingame and, after his death, to his estate, Yale Press breached the contracts. However, as noted above, both contracts clearly stated that Yale Press had permission to publish the Papers. Moreover, both contracts set forth formulae for the calculation of royalties and indicated that the payments were to be made to ASALH (and in the case of the 1976 contract, to two Yale academic departments). Evidence was presented at the injunction hearing indicating that Yale had performed under the contracts, paying royalties appropriately to the designated entities, and that Yale continues to perform under the 1979 contract. There was no evidence offered by the plaintiff that Yale had breached the 1976 or 1979 agreements, or was currently in breach of the 1979 agreement. The evidence presented by the plaintiff–indicating that the Blassingame estate had not been paid royalties for the sale of the Papers–did not constitute evidence of a breach, given that the contracts at issue clearly stated that Blassingame and his estate were not entitled to receive royalties.

Regarding its unjust enrichment claim, the plaintiff is unlikely to be able to demonstrate that Yale was unjustly enriched by publishing the papers given the evidence that Yale Press's

publishing of the Papers was done pursuant to its contractual rights.

Thus, the plaintiff has failed to demonstrate a likelihood of success on the merits as he has not presented evidence that the 1976 and 1979 contracts between Blassingame and Yale Press were invalid or that Yale Press was in breach of either of those agreements.

**IV.  Serious Questions Going to the Merits**

As an alternative to demonstrating a likelihood of success on the merits, the plaintiff is still entitled to a preliminary injunction if he can demonstrate that there are "sufficiently serious questions going to the merits of the claim as to make it fair ground for litigation, and a balance of the hardships tips decidedly" in its favor.  See, e.g., Able, 44 F.3d at130.

However, "[a]s discussed above, [the Court has] found that [the plaintiff] failed to demonstrate any possibility of success on the merits, let alone probability. [The Court finds], therefore, . . . [the plaintiff has] failed to raise sufficiently serious questions going to the merits to make them fair ground for litigation." Blum v. Schlegel, 18 F.3d 1005, 1016 (2d Cir. 1994). Furthermore, "[b]ecause a movant for preliminary injunction must demonstrate both sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping in his or her favor" and because this Court has determined that the plaintiff has not demonstrated that there are serious questions going to the merits, it is unnecessary for this Court to make a determination on the balance of hardships.  See id.

## CONCLUSION

For the forgoing reasons, plaintiff's request for a preliminary injunction [Doc. # 27] is DENIED.

SO ORDERED this  6th  day of July 2004, at Hartford, Connecticut

                                                   /s/ CFD
                                           **CHRISTOPHER F. DRONEY**
                                           **UNITED STATES DISTRICT JUDGE**